[No. A123636. First Dist., Div. Two. Mar. 9, 2010.]

SAN FRANCISCO HOUSING AUTHORITY, Plaintiff and Respondent, v. SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 790, Defendant and Appellant.

934

## COUNSEL

Weinberg, Roger & Rosenfeld, Vincent A. Harrington, Jr., and Kerianne R. Steele for Defendant and Appellant.

Cholakian & Associates, Kevin K. Cholakian and Curtis R. Ogilvie for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.—**

### INTRODUCTION

"California law allows a court to correct or vacate a contractual arbitration award if the arbitrators 'exceeded their powers.' [Citations.]" (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 366 [36 Cal.Rptr.2d 581, 885 P.2d 994] (*Advanced Micro Devices*).) Here, the San Francisco Superior

Court vacated an arbitrator's award in its entirety on the ground that the remedy fashioned by the arbitrator was contrary to layoff provisions of the memorandum of understanding (MOU) between defendant Service Employees International Union, Local 790 (Union) and plaintiff San Francisco Housing Authority (Housing Authority) and, therefore, exceeded the arbitrator's power. The Union appeals from the judgment, contending (1) the arbitrator's remedy is rationally related to the violation she found; (2) the remedy she ordered was not precluded by any provision of the agreement; and (3) the arbitrator acted within her authority based upon the parties' stipulation in submitting the matter to arbitration that if a breach of the MOU was identified, the arbitrator would determine the appropriate remedy. We shall conclude the arbitrator did not exceed her powers and shall reverse the judgment of the trial court.

## FACTS AND PROCEDURAL BACKGROUND[1]

*Layoff and Grievance Provisions of the MOU*

Article IX, the layoff provision of the MOU between the Housing Authority and the Union, provides in relevant part:

"Section 1. Notice of Layoff. Seniority by classification will apply in cases of layoffs, demotions, and rehires. . . .

"Section 2. Seniority Bumping Rights. An employee with greater [Housing] Authority seniority may bump an employee with less seniority in the same classification, or in a lower classification in the same classification series. In addition, an employee may bump an employee with less seniority in a lower classification not in the same classification series if she/he has worked six (6) months in the lower classification and has maintained her/his skill level. A temporary or term employee may not bump a regular permanent employee, regardless of her/his seniority. [¶] . . . [¶]

"Section 6. Alternatives to Layoff. . . . The Union has five (5) days after receiving notice [of contemplated layoffs] to request a meeting with the [Housing] Authority to meet and confer on the necessity for, impact of, and alternatives to such layoffs. The [Housing] Authority agrees to submit any alternative to the layoff(s) that the Union proposes to the Executive Director or designee. . . ."

---

[1] We take the underlying facts from the arbitrator's decision and award. It is appropriate to do so, consistent with the rule that we do not review an arbitration award for legal or factual error (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11–12 [10 Cal.Rptr.2d 183, 832 P.2d 899] (*Moncharsh*)).

Article XI, section 2, subdivision (d) of the MOU,[2] sets forth a grievance procedure for resolution of all disputes arising out of the MOU. It provides in relevant part:

"Level Three. In the event that the Union and/or employee is not satisfied with the decision rendered by the Executive Director or designee, any remaining unresolved disputes shall be submitted to an impartial arbitrator mutually acceptable to the [Housing] Authority and the Union. . . . The decision of the Arbitrator shall be final and binding. . . . [¶] . . . [¶]

"Except when an agreement of the facts is submitted by the parties, it shall be the duty of the arbitrator to hear and consider the evidence submitted by the parties; to make written findings of fact and a disposition of the grievance which shall be final and binding upon the parties. *The arbitrator shall have no power to amend this agreement or to recommend such amendment.*" (Italics added.)

The MOU also contains a "Management Rights" clause, stating that "[e]xcept to the extent there is contained in this agreement express and specific provision to the contrary, nothing herein shall be construed to restrict any legal [Housing] Authority rights concerning direction of its work force," and that the Housing Authority "may determine the methods, means and personnel by which the [Housing] Authority's operations are to be conducted."

*Manchester's Work History*

At the time of her layoff in 2005, Donise Manchester had been employed by the Housing Authority for 14 years. She was employed by the Housing Authority in 1991, first as a temporary employee, and then in a permanent position classified as administrative clerk from September 1991 until she was reclassified in 1997 to senior storekeeper. When she was an administrative clerk, several of those positions were audited and some, but not all, were reclassified as senior administrative clerk. Manchester never occupied a senior administrative clerk position, having moved to a different classification by the time the reclassification study was completed. In 1998, the senior storekeeper position was abolished, and she bumped into a different position and was again classified as an administrative clerk. She was reclassified as a senior account clerk in February 1999 until June 2003. (While so classified, she was assigned from May 2000 through January 2001 to replace the

---

[2] In an apparent typographical error, MOU article XI (Grievance Procedure) contains two section 2 headings: this first is captioned "Section 2. Time Limits"; the second is captioned "Section 2. Grievance Procedure." Our references to article XI, section 2, are to the latter "Section 2. Grievance Procedure."

financial secretary, who was out because of illness, and was formally assigned as "acting financial secretary" in September 2000, after improving her typing skills.) When classified as a senior account clerk, she requested a desk audit and was reclassified to "acting accountant" in August 2002, but was not reclassified as an accountant, because she did not complete the educational prerequisites for that classification. She was returned to senior account clerk classification in February 2003.

In June 2003, Manchester was reassigned to the position of distribution specialist at the warehouse, and was told the reassignment avoided her being laid off in that year's budget cut. In that position, her assignment changed drastically from her senior account clerk position to what she characterized as a "laborer's" job, with significantly reduced level of skills, responsibilities and duties, including cleaning and operating a forklift. However, the Housing Authority continued to pay her at the higher rate of her prior position.

On June 1, 2005, Manchester was placed on paid administrative leave, pending investigation of allegations of inappropriate conduct. She was laid off on September 1, 2005, while still on administrative leave and before the investigation was completed. No further action was contemplated at that time because of the layoff. No notice of intended disciplinary action was issued and management witnesses testified that she would not have been terminated based on the allegations of inappropriate conduct, even if discipline were to result after completion of the investigation.

In 2005, the Housing Authority initiated layoffs due to a documented budget shortfall, caused by substantial funding decreases from the operating subsidies the Housing Authority received from the United States Department of Housing and Urban Development. The layoff list prepared in August 2005 listed a total of 29 employees to be laid off, including five temporary employees. Six permanent employees in the Union were listed for layoff, including Manchester, plus one employee who had bumping rights to a senior administrative clerk position.

Manchester had been continuously active in the Union since 1994, serving as a shop steward, representing employees, filing grievances, and requesting job audits that resulted in reclassifications. At the time of the 2005 layoff, Manchester's warehouse position was under the direction of the then deputy administrator for management support, who was directed to cut his budget to enable the Housing Authority to meet a 10 percent budget cut for the 2006 fiscal year. He testified that it was his decision to lay off Manchester, and that he was never told to single her out for elimination. He testified that she was selected solely because the MOU requires layoff by seniority in the classification. The only other distribution specialist had been in that classification for

a long time and Manchester had been in the position only since 2003. No other distribution specialist positions existed in the Housing Authority that she could bump into. Nor were there any "lower level" classifications in that series into which she could bump.

Pursuant to article IX of the MOU, Housing Authority representatives met with the Union in response to the Union's request to meet and confer over alternatives to the proposed layoffs. Manchester also met with Housing Authority's human resources (HR) representatives to discuss alternatives to her layoff. Among the alternatives proposed by the Union was to allow Manchester to bump into an eligibility clerk position, since she had been on the eligibility list for that position. The Housing Authority did not agree to that alternative, claiming that Manchester had no bumping rights under the MOU because she had never been in that position, as required by article IX. A second alternative proposed by the Union was that Manchester bump into a senior administrative clerk position. The Housing Authority declined that alternative on the ground that Manchester had no bumping rights as she had never been a senior administrative clerk. She had transferred into a senior account clerk position in 1999, before her administrative clerk position had been reclassified, although some administrative clerk positions were upgraded to senior level in a reclassification study done at that time.

*Arbitration*

Manchester filed a grievance. At the December 2007 hearing before the arbitrator, the parties stipulated that the issues to be determined were: "Did the San Francisco Housing Authority violate Article IX and/or Article X of the MOU in selecting [Manchester] for layoff in 2005? [¶] If so, what is the appropriate remedy?"

At the hearing, the Union representative testified that the Housing Authority rejected the Union's proposal to waive the MOU provisions in order to place Manchester and others in classifications that were similar to positions they previously held, to avoid laying off a more senior employee. The Housing Authority's HR director testified the Housing Authority was not willing to agree to waive the layoff provisions in the MOU because allowing Manchester to bump into an eligibility clerk position, which she had never held, would create the basis for a grievance by the bumped eligibility clerk. *She acknowledged that nothing in the MOU prohibited placing employees into positions into which they could not automatically bump under the terms of section 2 of the layoff article.* She also acknowledged that the Housing Authority continued to employ both term and temporary employees after the 2005 layoff, and specifically that it employed temporary employees in senior administrative clerk positions. The HR director could not recall if temporary employees

were employed as eligibility clerks or account clerks. The position of senior account clerk, at one time held by Manchester, no longer existed.

### 1. *Article IX violation*

The arbitrator found that the Housing Authority had *not* violated sections 1 or 2 of article IX regarding seniority bumping rights. Manchester "was the less senior of the two employees in the classification of [d]istribution [s]pecialist, so she had no bumping rights to the other position. No lower level position in that classification series existed, so there was no lower position to bump into. The Union ha[d] identified no lower-level position in another classification series, occupied by an employee with less [Housing] Authority seniority, which [Manchester] had occupied for at least six months."

The arbitrator further found, however, that the Housing Authority *had* violated the mandate of section 6, of article IX of the MOU, requiring it to meet and confer and consider in good faith the Union's alternatives to layoffs.

The arbitrator reasoned that the negotiated language requiring the employer to meet and confer on "alternatives to layoff" created "an express obligation for the [Housing] Authority to consider in good faith alternatives that the Union may propose." The Housing Authority rejected the Union's proposed alternatives solely on the basis that the layoff provision did not give Manchester the automatic right to bump into either an eligibility clerk or senior administrative clerk position and that allowing her to do so would violate the MOU. The arbitrator found this response "rendered meaningless the contract provision that requires the parties to meet and confer over 'alternatives' to layoff. If the language is read to mean that the only purpose of the meet-and-confer is to determine what the contract requires, that would not allow the parties to consider 'alternatives.' Nothing in the language states or implies that the parties cannot agree on an alternative that would modify the contract's requirements with regard to a specific employee. In fact, that appears to be the primary if not the only purpose of including this provision in the layoff article—to recognize that circumstances may justify an alternative not expressly addressed in the layoff article."

The arbitrator discounted the Housing Authority's explanation that waiver of the contract requirements in this case would give rise to a grievance by another employee adversely affected by giving Manchester a benefit not conferred by the MOU. The arbitrator pointed out that the Union had not agreed that this was a bar to its proposal, any agreement between the Union and the Housing Authority during a contractually mandated meet-and-confer session would become part of the collective bargaining agreement, and an

affected employee could not grieve an action allowed by an agreed-to amendment of the MOU. The arbitrator continued: "That being said, the alternatives proposed by the Union would not have violated other bargaining unit members' contractual rights, *even without any modification.* The MOU as written gives a permanent employee bumping rights over temporary or term employees, since layoff is to be by seniority and the latter accrue no seniority. The HR [d]irector acknowledged that there were temporary and/or term employees in [s]enior [a]dministrative [c]lerk positions that were retained at the time of [Manchester's] layoff." (Italics added.)

The arbitrator also found that nothing in the evidence concerning Manchester's experience or performance indicated she would not be competent to fill a senior level administrative clerk position. Rather, the "sequence of events prevented her from qualifying, under the express terms of the contract, to bump a temporary or term employee in a [s]enior [a]dministrative [c]lerk position in 2005. The Union recognized this strict application of the terms of the layoff provision thwarted the purpose of the layoff provision, which is to protect senior employees from being laid off while less senior or temporary employees are retained."

The arbitrator concluded that the Housing Authority's "rejection of this reasonable proposal to waive strict application of the contract's requirements to save the job of a 16-year employee was arbitrary and without a rational basis. As such, the refusal to consider the Union's proposal to waive strict application of the MOU and to place [Manchester] in a [s]enior [a]dministrative [c]lerk position violated [a]rticle IX's mandate that the [Housing Authority] meet and confer and consider in good faith the Union's proposed alternatives to layoffs."

The arbitrator found it unnecessary to make a finding on the Union's claims that the Housing Authority's refusal to consider the proposal was motivated by bias against Manchester because of her service as a Union shop steward and/or because laying her off allowed the Housing Authority to "get rid" of her, without needing to establish just cause to discipline her for the alleged misconduct that was under investigation at the time.

### 2. *Article IX remedy*

As a remedy for the article IX violation, the arbitrator directed the Housing Authority to reinstate Manchester, to implement the Union's proposal that it had rejected without good faith consideration, and to place Manchester in a senior administrative clerk position that was filled by temporary or term employees at the time of the 2005 layoffs. The arbitrator further directed that Manchester "is to be made whole for lost compensation from the date she left

paid status until the date of her reinstatement, offset by earnings from other sources. Her seniority is to be restored to reflect continuous service from the date of her layoff until the date of reinstatement." The arbitrator also directed that in the event none of the senior administrative clerk positions remained in existence at the date of the award, the Housing Authority was to award Manchester make-whole compensation and seniority from the date of her layoff until the date the last of such positions was eliminated.

### 3. *Article X violation and remedy*

The arbitrator further found moot the grievance that Manchester was laid off as a pretext for discipline, concluding that the same remedy would be adequate were the grievance proved. The arbitrator also found Manchester's due process right to respond to the charges of misconduct had been delayed indefinitely because of the intervening layoff. Referring to the management witnesses' acknowledgement that, even if substantiated, the allegations of misconduct would not result in termination, the arbitrator found the Housing Authority violated article X by failing to investigate the allegations in a timely manner before imposing the layoff nearly four months after Manchester had been put on administrative leave and then holding the matter indefinitely in abeyance, without affording her an opportunity to respond. The remedy ordered by the arbitrator was to remove from Manchester's personnel file, any references to the alleged occurrence under investigation at the time of the 2005 layoff and to forgo any further investigation or disciplinary action on that 2005 occurrence.

### *Trial Court Vacates the Arbitration Award*

On June 12, 2008, the Housing Authority filed a motion in the superior court to vacate and/or correct the arbitration award "on the grounds that the [a]rbitrator exceeded her powers by ruling that the [Housing] Authority had to reinstate [Manchester] as a [s]enior [a]dministrative [c]lerk position, a position that [Manchester] was not entitled to under the collective bargaining agreement. [Citations.]"

On September 25, 2008, the trial court filed its order granting the petition to vacate the arbitration award in its entirety on the ground that: "1. The arbitrator's award is contrary to Article IX of the MOU and as a consequence, the remedy fashioned exceeds the power of the arbitrator. [Citations.] . . . [¶] 2. The arbitrator found that [the Housing Authority] violated the meet and confer provisions of the MOU and the appropriate remedy is to direct the parties to meet and confer and, in good faith, seek alternatives to [Manchester's] layoff." The court ordered the parties to meet and confer in good faith to seek alternatives to Manchester's layoff.

This timely appeal by the Union followed.

## DISCUSSION

*Standard of Review for Arbitration Decisions*

■ "On petition of a party to an arbitration (see [Code Civ. Proc.,] §§ 1285, 1286.4[3]), the superior court is to vacate an arbitrator's award if '[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.' (§ 1286.2, subd. (a)(4).) As [the California Supreme Court] ha[s] explained in prior cases, however, this provision does not supply the court with a broad warrant to vacate awards the court disagrees with or believes are erroneous." (*Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1184 [77 Cal.Rptr.3d 613, 184 P.3d 739] (*Gueyffier*).)

"Absent an express and unambiguous limitation in the contract or the submission to arbitration, an arbitrator has the authority to find the facts, interpret the contract, and award any relief rationally related to his or her factual findings and contractual interpretation. (*Moshonov v. Walsh* (2000) 22 Cal.4th 771, 775–776 [94 Cal.Rptr.2d 597, 996 P.2d 699]; *Advanced Micro Devices*[, *supra*,] 9 Cal.4th 362, 375, 383 . . . ; *Moncharsh*[, *supra*,] 3 Cal.4th 1, 28 . . . .)" (*Gueyffier, supra*, 43 Cal.4th at p. 1182.) Inherent in the broad powers of the arbitrator "is the possibility the arbitrator may err in deciding some aspect of the case. Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." ' (*Moshonov v. Walsh*, at pp. 775–776, quoting *Moncharsh* . . . , at p. 28.)" (*Gueyffier*, at p. 1184.)

■ "An exception to the general rule assigning broad powers to the arbitrators arises when the parties have, in either the contract or an agreed submission to arbitration, explicitly and unambiguously limited those powers. ([*Advanced Micro Devices*], *supra*, 9 Cal.4th at pp. 375–376, 383.) 'The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate. [Citation.] Awards in excess of those powers may, under sections 1286.2 and 1286.6, be corrected or vacated by the court.' (*Id.* at p. 375.)" (*Gueyffier, supra*, 43 Cal.4th at p. 1185; accord, *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1356 [82 Cal.Rptr.3d 229, 190 P.3d 586].) "The scope of an arbitrator's authority is not so broad as to include an

---

[3] All statutory references are to the Code of Civil Procedure, unless otherwise indicated.

award of remedies 'expressly forbidden by the arbitration agreement or submission.' [Citation.]" (*Gueyffier*, at p. 1185, quoting *Advanced Micro Devices*, at p. 381.)

Absent more specific restrictions in the arbitration agreement or the party's submission, the question on the trial court's review of whether a remedy exceeds the arbitrator's powers (§ 1286.2, subd. (a)(4)) is whether the remedy "bears a rational relationship to the underlying contract as interpreted, expressly or impliedly, by the arbitrator and to the breach of contract found, expressly or impliedly, by the arbitrator." (*Advanced Micro Devices, supra*, 9 Cal.4th 362, 367; see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 8:129.2, p. 8-86 (rev. # 1, 2009).)

On appeal, we review de novo the superior court's order, but not the arbitrator's award. (*Advanced Micro Devices, supra*, 9 Cal.4th at p. 376, fn. 9; *Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1365 [131 Cal.Rptr.2d 524] ["whether the award was made in excess of the arbitrators' contractual powers" is a question of law].) "[T]he arbitrator's award is entitled to deferential review." (*Ajida Technologies, Inc. v. Roos Instruments, Inc.* (2001) 87 Cal.App.4th 534, 541 [104 Cal.Rptr.2d 686]; see also *Advanced Micro Devices*, at p. 376, fn. 9; *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056 [9 Cal.Rptr.3d 286] (*O'Flaherty*); Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶ 8:129.2, p. 8-86.)

*Application*

The Housing Authority maintains the trial court correctly determined the arbitrator had exceeded her powers, because the remedy she imposed was contrary to the layoff provisions of article IX. It urges that remedy of placing Manchester in a senior administrative clerk position that was filled by temporary or term employees at the time of the 2005 layoffs modified the collective bargaining agreement, contrary to the express provision of the MOU denying the arbitrator the power to amend the agreement or to recommend such amendment.

■ The extremely deferential standard of review under which we operate defers to the arbitrator's interpretation of the collective bargaining agreement. (See, e.g., *Gueyffier, supra*, 43 Cal.4th at p. 1185; *Moshonov v. Walsh, supra*, 22 Cal.4th at p. 779; *Advanced Micro Devices, supra*, 9 Cal.4th at p. 381; *Hawaii Teamsters, Local 996 v. United Parcel Serv.* (9th Cir. 2001) 241 F.3d 1177, 1182–1183 (*Hawaii Teamsters*).) "[T]he fact that an arbitrator arguably misinterpreted a contract does not mean that he did not engage in the act of interpreting it. As bears repeating, 'so far as the arbitrator's decision *concerns* construction of the contract, the courts have no business overruling him

because their interpretation of the contract is different from his.' [Citation.]" (*Hawaii Teamsters*, at p. 1183, quoting *Steelworkers v. Enterprise Corp.* (1960) 363 U.S. 593, 599 [4 L.Ed.2d 1424, 80 S.Ct. 1358], italics added by *Hawaii Teamsters*.) "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract. [Citation.]" (*Advanced Micro Devices*, at p. 381.) Consequently, the dispositive question before us is whether the remedy imposed by the arbitrator was "even arguably based on the contract" (*ibid.*) or, stated otherwise, whether the award " 'conflicts with express terms of the arbitrated contract.' " (*Ibid.*)

The Housing Authority argues that the arbitrator acknowledged that she was modifying the contract. We disagree. The arbitrator recognized that the *parties* could modify the contract and that, had they done so, a worker displaced would not have a grievance because the agreement would become the contract. The arbitrator expressly found the primary purpose of the "alternatives to layoff" provision of article IX was to recognize that a circumstance may justify an alternative not expressly provided for in the layoff article and that the Housing Authority had a duty under the MOU to consider in good faith reasonable alternatives to Manchester's layoff.

The arbitrator found the Housing Authority's "rejection of [the Union's] reasonable proposal to *waive strict application* of the contract's requirements" was "arbitrary and without a rational basis," in violation of "[a]rticle IX's mandate that the [Housing Authority] meet and confer and consider in good faith the Union's proposed alternatives to layoffs." (Italics added.) The Housing Authority seizes upon the italicized language to support its claim that the arbitrator's remedy constituted an amendment to or modification of the collective bargaining agreement. We disagree. This language appears in the part of the arbitrator's decision finding a violation of article IX's mandate to meet and confer over alternatives to layoff. The Housing Authority does not maintain that the arbitrator exceeded her powers in finding that it violated the meet-and-confer provision of the agreement. Rather, the sole contention here is that the *remedy* imposed was precluded by the seniority provisions of the contract and necessarily amended the agreement contrary to article XI, section 2, subdivision (d).

Critical to the arbitrator's award was her acknowledgement that "the alternatives proposed by the Union would not have violated other bargaining unit members' contractual rights, *even without any modification. The MOU as written gives a permanent employee bumping rights over temporary or term employees, since layoff is to be by seniority and the latter accrue no seniority.* The HR [d]irector acknowledged that there were temporary and/or term employees in [s]enior [a]dministrative [c]lerk positions that were retained at the time of [Manchester's] layoff." (Italics added.)

As interpreted by the arbitrator, nothing in the express terms of the MOU precluded the arbitrator from reinstating Manchester to the senior administrative clerk position with backpay. The agreement does not say that the seniority bumping rights provisions are the exclusive or sole manner in which an employee may be retained in case of layoffs. The remedy imposed here by the arbitrator did not modify the layoff provision of the MOU, as temporary or term employees occupying the position had no seniority rights. Indeed, as interpreted by the arbitrator, the meet-and-confer provision of the MOU *required* the parties to consider alternatives to layoff "not expressly addressed in the layoff article."

In *Gueyffier, supra*, 43 Cal.4th 1179, the California Supreme Court concluded that an arbitrator did not exceed his powers when he applied an equitable defense to excuse a party from performing a material condition of an agreement, despite a provision in the agreement that the notice-and-cure provision at issue was " 'a material term of this Agreement and may not be modified or changed by any arbitrator in an arbitration proceeding or otherwise.' " (*Id.* at pp. 1183, 1185.) According to the Supreme Court, "[w]hile the contract limitation on arbitral powers to change the parties' agreement was explicit, it did not unambiguously prohibit the arbitrator from *excusing performance* of a contractual condition where the arbitrator concluded performance would have been an idle act. The contract's no-modification provision would have been effective to bar an actual change or modification. Had the arbitrator, for example, decided the parties' agreement should be reformed by changing the required 60 days' notice to 30 days' notice, he would have exceeded his powers. But to excuse performance of a contract term in a specific factual setting is not, in ordinary usage at least, to 'modif[y] or change[]' the term. The no-modification clause did not 'explicitly and unambiguously' ([*Advanced Micro Devices*], *supra*, 9 Cal.4th at p. 383) bar the arbitrator from deciding that [the] notice-and-cure provision was *inapplicable* on the facts of the case as he found them." (*Gueyffier*, at p. 1185, fn. omitted.) The court noted that the parties could have expressly agreed that the arbitrator would have no power to excuse performance of a material term, but they had not done so. (*Id.* at fn. 3.)

In *Advanced Micro Devices, supra*, 9 Cal.4th 362, the trial court confirmed an award in an arbitration between two microchip manufacturers awarding a very broad remedy, but the Court of Appeal reversed, finding itself "unable to locate a 'rational nexus' between paragraphs . . . of the award and the contract itself. Therefore, the court concluded, the arbitrator had improperly 'rewr[itten] the parties' agreement' " in paragraphs that could not be treated as surplusage without affecting the merits of the decision. (*Id.* at p. 371.) The Supreme Court reversed the Court of Appeal, acknowledging that "arbitrators may not award remedies *expressly forbidden* by the arbitration agreement or submission . . . ." (*Id.* at p. 381, italics added.) "The remedy awarded,

however, must bear some rational relationship to the contract and the breach. The required link may be to the contractual terms as actually interpreted by the arbitrator (if the arbitrator has made that interpretation known), to an interpretation implied in the award itself, or to a plausible theory of the contract's general subject matter, framework or intent. [Citation.] The award must be related in a rational manner to the breach (as expressly or impliedly found by the arbitrator)." (*Id.* at p. 381, fn. omitted.) The Supreme Court found it "difficult to see" "[h]ow the violation of ' "an express and explicit restriction on the arbitrator's power" ' [citation] could be considered rationally related to a plausible interpretation of the agreement . . . ." (*Id.* at pp. 381–382.)

In *Hawaii Teamsters, supra*, 241 F.3d 1177, the Ninth Circuit Court of Appeals upheld an arbitrator's award construing a collective bargaining agreement to find an employee's use of profanity warranted summary dismissal without prior warning. The collective bargaining agreement between the parties provided that in cases pertaining to discharge or suspension, " '[n]o employee(s) shall suffer suspension or discharge without the employee(s) having been given a written warning notice . . . .' " Seven " 'cardinal infractions' " were specified as " 'dischargeable offenses without the necessity of a warning letter being in effect.' " (*Id.* at p. 1179.) Profanity amounting to insubordination was not among the seven. (*Ibid.*) The agreement also limited the employer's ability to fire summarily, providing that " '[e]xcept in cases involving cardinal infractions . . . an employee to be discharged or suspended shall be allowed to remain on the job, without loss of pay unless and until the discharge or suspension is sustained under the grievance procedure.' " (*Id.* at pp. 1179–1180.) The agreement also provided that the arbitrator " 'shall not have the authority to amend or modify this Agreement to establish new terms or conditions of employment.' " (*Id.* at p. 1180.) The arbitrator concluded that the employee's behavior rose " 'to such insubordination and disrespect as to fall within industrially and socially disapproved conduct such as to authorize immediate dismissal without warning under Article 28.' " (*Ibid.*) The arbitrator determined there were " 'other cardinal sins perhaps not specifically named in this . . . article, which fall within the broad scope of insubordination and for which forthwith termination without benefit of warning[] may legitimately be imposed.' " (*Ibid.*)

The majority in *Hawaii Teamsters, supra*, 241 F.3d 1177, recognized the "extremely deferential" scope of appeal, requiring confirmation of the arbitral award "unless the arbitrator has 'dispense[d] his own brand of industrial justice' by making an award that does not 'draw[] its essence from the collective bargaining agreement.' [Citation.]" (*Id.* at pp. 1180–1181.) The employee association asserted that the arbitrator's interpretation of the collective bargaining agreement was "not plausible," insofar as the arbitrator determined that the list of cardinal infractions was not exclusive. However,

the appellate court rejected the " 'plausibility' inquiry" as "an independent avenue for a merits-based attack on an arbitral award" (*id.* at p. 1183), and declined to opine upon whether the arbitrator " 'misinterpreted' the [collective bargaining agreement]; that is simply not our role." (*Id.* at p. 1184.) "Because the arbitrator drew the essence of his award from the collective bargaining agreement, as he was required to do," the court "[could not] conclude in this case that the arbitrator acted on a whim or that he was out on a limb meting out his own version of industrial justice." (*Ibid.*)

In *Social Services Union v. Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458 [255 Cal.Rptr. 746] (*Social Services Union*), the arbitrator ordered the agency to promote an employee as a remedy for the agency's violation of the MOU. The grievance section of the MOU contained a provision that " '[t]he arbitrator shall have no power to amend this [MOU], a policy or action of the Governing Board, State law, Federal law, State or Federal regulations or rulings, or written Agency rules, or to recommend such an amendment.' " (*Id.* at p. 1462.) The trial court struck the remedial portion of the award and the Court of Appeal reversed, holding the arbitrator had not exceeded his authority where the MOU authorized "disposition of the grievance" by the arbitration. (*Id.* at pp. 1461–1462, italics omitted.) The arbitrator interpreted a provision of the MOU requiring the employer to make " '[e]very reasonable effort' " " 'when open positions occur to give consideration to current Agency employees' " as requiring "that if there were qualified existing employees, those employees were to be offered the promotional opportunities before the position was offered to a nonemployee." (*Ibid.*) The appropriate remedy for violation of this provision of the MOU was to require the employer to offer the position to the grievant. (*Id.* at p. 1462.) In upholding the arbitrator's remedy, the *Social Services Union* court reasoned: "In the instant case the arbitrator was required to resolve a grievance concerning promotions, and to make a disposition thereof. Since *nothing in the agreement expressly prohibited the remedy imposed*, its imposition by the arbitrator was a proper 'disposition of the grievance' pursuant to [the MOU], and consistent with what was found to be the intent of the parties." (*Id.* at p. 1464, italics added.)

As in *Gueyffier, supra,* 43 Cal.4th 1179, 1185, *Advanced Micro Devices, supra,* 9 Cal.4th 362, 381, *Hawaii Teamsters, supra,* 241 F.3d 1177, 1184, and *Social Services Union, supra,* 207 Cal.App.3d 1458, 1464, the remedy awarded here was not expressly forbidden or prohibited by either the arbitration agreement or by the submission. The mere existence of a "no modification" provision in *Gueyffier, Hawaii Teamsters,* and *Social Services Union* did not prevent the arbitrator from fashioning a remedy that was neither expressly contemplated nor directly contrary to the agreement. Furthermore, the remedy awarded here was "rationally related" to the MOU as

interpreted by the arbitrator and to the breach of the MOU she found. (*Advanced Micro Devices*, 9 Cal.4th at p. 381, fn. 12; accord, *Gueyffier, supra*, 43 Cal.4th at p. 1182.)

Cases relied upon by the Housing Authority are distinguishable, as they involved remedies that directly conflicted with clear and unambiguous language in the collective bargaining agreements.

In *Intern. Broth. of Elec. Workers v. Thomas & Betts* (6th Cir. 1999) 182 F.3d 469, the Sixth Circuit Court of Appeals found that the arbitrator disregarded terms of the collective bargaining agreement, including a no modification provision, by adding a requirement that a company could not unreasonably withhold excusing an employee's absence where "[t]he clear concise and unambiguous language of the collective bargaining agreement provided that an employee who 'is absent for three (3) consecutive working days without notifying the Company of the reason for his absence . . . is considered a voluntary quit.' " (*Id.* at p. 472.) The arbitrator acknowledged that he had " 'interpolate[ed] . . . contract terms,' i.e., imposed additional requirements, which were not written in the agreement." (*Ibid.*)

Similarly, in *Pacific Motor Trucking v. Automotive Machinists* (9th Cir. 1983) 702 F.2d 176, an arbitration award was properly vacated where "the award conflict[ed] directly with the contract . . . ." (*Id.* at p. 177.) The contract provided the company could select working foremen without regard to seniority. The arbitrator acknowledged the section gave the company discretion over the position. Nonetheless, he ruled the company could not demote the individual from the position, given the individual's long tenure on the job. In so doing, "[t]he arbitrator disregarded a specific contract provision to correct what he perceived as an injustice." (*Ibid.*)

*O'Flaherty, supra*, 115 Cal.App.4th 1044, 1056–1061, was distinguished by the California Supreme Court in *Gueyffier*, on the grounds that the award in *O'Flaherty* "contravene[d] an express, unambiguous limitation in the contract itself." (*Gueyffier, supra*, 43 Cal.4th at p. 1187.) "In [*O'Flaherty*,] at pages 1056–1061, a dispute arising out of the dissolution of a law partnership, the Court of Appeal held the arbitrator had exceeded his powers by ordering that the withdrawing partners forfeit their partnership capital accounts. Because both the partnership agreement and California case law provided (according to the appellate court majority) for a return of capital to withdrawing partners, the award contravened explicit limitations in the agreement's arbitration clause that the arbitrator would have no power ' "to grant any remedy which is either prohibited by the terms of this Agreement, or not available in a court of law." ' (*Id.* at p. 1057.)" (*Gueyffier*, at p. 1187, fn. omitted.) The *Gueyffier* court distinguished *O'Flaherty*, on the grounds

that the contract in *Gueyffier* "did not limit the arbitrator to granting only that relief or applying only those defenses available in a court of law. Nor did the award . . . contravene an express, unambiguous limitation in the contract itself. . . . [T]he written award does not demonstrate the arbitrator violated the directive that he not 'modify or change' a material term of the agreement; it shows only that he declined, on equitable grounds, to hold Gueyffier to the requirement she give prompt written notice of breach." (*Gueyffier*, at pp. 1187–1188.)[4]

In *DiMarco v. Chaney* (1995) 31 Cal.App.4th 1809 [37 Cal.Rptr.2d 558] (*DiMarco*), the Court of Appeal held that the arbitrator had exceeded his powers by refusing to award attorney fees to the litigant he expressly found to be the prevailing party where the contract provided that " 'the prevailing party *shall* be entitled to reasonable attorney's fees and costs.' " (*Id.* at p. 1815.) As characterized by the Supreme Court in *Gueyffier, supra,* 43 Cal.4th at page 1188, the appellate court in *DiMarco* "found a direct, explicit contradiction between the contractual command and the arbitrator's refusal to award the prevailing party fees . . . ."[5]

In *Anheuser-Busch, Inc. v. Beer, Soft Drink, Water* (7th Cir. 2002) 280 F.3d 1133 (*Anheuser-Busch*), the appellate court held that the arbitrator exceeded the scope of his authority by relying on the *past practices* of the parties to conclude that a two-tiered commission rate for drivers, which was set forth in a collective bargaining agreement, did not govern the parties' agreement.

---

[4] *Gueyffier* noted that "[t]he dissenting justice in [*O'Flaherty*] would have held the arbitrator had the authority to decide that neither California law nor the parties' agreement required an accounting of partnership capital under all circumstances and that the award therefore could not be vacated on these grounds ([*O'Flaherty,*] *supra,* 115 Cal.App.4th at pp. 1098–1101 (dis. opn. of Grignon, J.).)" (*Gueyffier, supra,* 43 Cal.4th at p. 1188, fn. 5.) The Supreme Court refused to express an opinion on the merits of that question. (*Ibid.*)

[5] In *Moshonov v. Walsh, supra,* 22 Cal.4th 771, the Supreme Court refused to determine whether *DiMarco*'s reasoning was correct in a case in which the arbitrator had interpreted a contract to deny attorney fees, despite a similar provision that the prevailing party "shall" recover attorney fees. The Supreme Court held the arbitrator's interpretation of the agreement was not reviewable and further observed: "In *DiMarco, supra,* 31 Cal.App.4th 1809, the appellate court found no interpretation of the fees clause, express or implied in the arbitrator's decision, according to which the defendant would not have been entitled to her fees; rather, the court concluded the arbitrator's denial of fees to the prevailing party on an action to rescind the contract, based solely on the arbitrator's belief he had discretion to do so, conflicted with the explicit and mandatory terms of the agreement, which provided that the prevailing party in an action arising from the agreement 'shall' recover fees." (*Moshonov v. Walsh,* at p. 779.) In contrast, the arbitrator in *Moshonov v. Walsh,* expressly based her decision on an interpretation of the contractual fees clause, finding it inapplicable to the action. Interpretation of the contract underlying the dispute was within the matter submitted to arbitration, and could amount, at most, to an error of law on a submitted issue, which is not in excess of the arbitrator's powers. Thus, the arbitrator's decision "did not violate ' " 'an express and explicit restriction on the arbitrator's power.' " ' (*Advanced Micro Devices, supra,* 9 Cal.4th at pp. 381–382.)" (*Moshonov v. Walsh,* at p. 779.)

According to the court, "[t]his finding by the arbitrator *contradicts and ignores the express language* throughout the 1998 contract at issue . . . ." (*Id.* at p. 1136, italics added.) That express language, included "the unambiguous terms contained within the commission rates clause," the arbitration clause, specifying that the arbitrator had " 'no authority to add to, subtract from, modify or change' the terms of the contract," and the zipper clause, stating that the agreement superseded "all prior agreements *and practices* not specifically preserved in the contract." (*Id.* at pp. 1136, 1135, italics omitted.)[6]

Finally, in a case not mentioned by the parties, *California Faculty Assn. v. Superior Court* (1998) 63 Cal.App.4th 935, the court held the arbitrator had exceeded his powers in directing tenure be granted to the grievant where the collective bargaining agreement prescribed a strictly limited role for arbitrators in reviewing tenure decisions. Consistent with that agreement, the parties submitted to arbitration only the question whether the university president " 'engage[d] in reasoned judgment' " in denying a grievant tenure. (*Id.* at p. 942.) The court held the arbitrator had impermissibly "substituted his own judgment for the president's" as to whether the grievant had met the tenure standards. (*Id.* at p. 951.)

█ Unlike the remedies in the foregoing cases, the remedy imposed by the arbitrator here did not conflict with clear and explicit language of the MOU. Rather, the arbitrator's interpretation of the contract allowed her to frame a remedy that, although not expressly provided for in the layoff article, was, nevertheless, reasonably related to the arbitrator's interpretation of the contract and was not expressly prohibited by it. As such, the remedy did not "amend" the MOU.

*Agreement to Submit Issues*

The Union argues that the parties can and did expand the arbitrator's authority to craft a remedy by submitting to arbitration the broadly phrased question: If the Housing Authority violated article IX and/or article X of the MOU in selecting Manchester for layoff, "what is the appropriate remedy?" We need not determine whether the submission here expanded the arbitrator's authority beyond the provisions of the contract. We have determined that the

[6] The Seventh Circuit declined to extend *Anheuser-Busch, supra*, 280 F.3d 1133, in *Local 139, AFL-CIO v. J.H. Findorff & Son* (7th Cir. 2004) 393 F.3d 742. The court refused to allow a judicial declaration of the "plain meaning" of the contract to displace the arbitrator's interpretation, pointing out that *Anheuser-Busch* was not even a majority opinion, that the *Anheuser-Busch* dissent disagreed with the lead opinion's substitution of its view of the "plain" meaning of the agreement for that of the arbitrator, and that the concurring judge thought the arbitrator had expressly declared an unwillingness to be bound by the contract language and had reverted to a precontractual practice instead. (*Local 139, AFL-CIO v. J.H. Findorff & Son*, at p. 746.)

remedy here did not contradict any express provisions of the agreement as interpreted by the arbitrator and that it was rationally related to the breach identified.

## DISPOSITION

The order of the trial court is reversed and the matter is remanded with instructions to deny the motion to vacate the award and to confirm the award.

Haerle, J., and Lambden, J., concurred.

A petition for a rehearing was denied March 25, 2010, and respondent's petition for review by the Supreme Court was denied June 23, 2010, S181873.