Filed 10/10/22  Praetorian Global v. Eel River Organics CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PRAETORIAN GLOBAL, INC., <br><br>    Plaintiff and Respondent, <br> v. <br> EEL RIVER ORGANICS, LLC, <br><br>    Defendant and Appellant. | A164245 <br><br> (Humboldt County <br> Super. Ct. No. CV2101222) |

Defendant Eel River Organics, LLC (ERO) appeals from a final judgment confirming an arbitration award entered against it in a contractual dispute with plaintiff Praetorian Global, Inc. (Praetorian).  ERO contends the trial court erred in confirming the award because the underlying contract was illegal and the arbitrator therefore lacked authority to enforce it.  Even if we assume, as ERO claims, that the contract violated a cannabis licensing regulation, the contract was not thereby rendered unenforceable.  As a result, we affirm.

1

# I.
## FACTUAL AND PROCEDURAL
## BACKGROUND[1]

ERO is a California limited liability company that "owns a farm in Humboldt County . . . on which it cultivates high quality cannabis plants." Praetorian is a Delaware corporation, headquartered in Colorado, "that owns and licenses cannabis-related intellectual property" and "the 'Binske' brand, a line of cannabis products." ERO is licensed to conduct "commercial cannabis activity" in California under the Medicinal and Adult-Use Cannabis Regulation and Safety Act (MAUCRSA or the Act), Business and Professions Code[2] section 26000 et sequitur, and Praetorian is not.

In January 2019, ERO and Praetorian entered a contract under which Praetorian licensed portions of its intellectual property to ERO and provided certain related services to enable ERO to sell cannabis products under the Binske brand (the contract). In exchange, ERO was to pay a monthly royalty, with a minimum total of $1 million due for the first year and $2 million due for the second year without regard to the volume of products sold. The contract contained an arbitration clause under which the parties agreed to submit disputes to binding arbitration in Colorado.[3]

Praetorian provided some services to ERO, such as assistance with product development and marketing, but ERO "was unable to launch . . . the

---

[1] The underlying facts, which are undisputed for purposes of this appeal, are primarily drawn from the arbitrator's decision. (See *San Francisco Housing Authority v. Service Employees Internat. Union, Local 790* (2010) 182 Cal.App.4th 933, 936, fn. 1.)

[2] All further statutory references are to the Business and Professions Code unless otherwise noted.

[3] The contract also provides that it shall be governed by Colorado law, but neither party claims that the issue whether the contract is void for illegality should be decided under that law instead of California law.

Binske brand products for most of 2019." The following summer, after ERO failed to pay over $2 million owed under the contract, Praetorian filed a demand for arbitration seeking damages for breach of contract.[4] ERO asserted counterclaims for breach of contract, breach of the covenant of good faith and fair dealing, and fraudulent misrepresentation.

In August 2021, after a three-day evidentiary hearing, the arbitrator found that ERO had breached the contract, rejected ERO's counterclaims, and issued a final award of over $3 million in favor of Praetorian.[5] As relevant here, the arbitrator rejected ERO's claim that the contract was illegal under former California Code of Regulations title 16, division 42, section 5032 (former section 5032), which prohibited entities licensed to conduct commercial cannabis activity from conducting such activity "on behalf of, at the request of, or pursuant to a contract with" an unlicensed entity.

After the arbitrator entered the final award, Praetorian filed a petition to confirm the award in the trial court. ERO opposed on the ground that the arbitrator exceeded her powers by issuing an award enforcing an illegal contract. No additional evidence was presented, and after considering the parties' briefing and hearing counsel's arguments, the court granted the petition in a summary order. A judgment confirming the award was entered on October 13, 2021.

---

[4] Praetorian also asserted that ERO had breached another contract between the parties, which related to ERO's house brand of products. That contract is not at issue in this appeal, and we do not discuss it further.

[5] The award included damages for breach of the contract's minimum royalty provision, late fees, and attorney's fees.

3

## II.
### DISCUSSION

### A.    *Judicial Review of Arbitration Awards*

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts.  'Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration.' " (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.)  Accordingly, "[i]n considering an appeal from a judgment confirming an arbitration award, we may not ' "review the merits of the dispute, the sufficiency of the evidence, or the arbitrator's reasoning, nor may we correct or review an award because of an arbitrator's legal or factual error, even if it appears on the award's face." ' " (*State Farm Mutual Automobile Ins. Co. v. Robinson* (2022) 76 Cal.App.5th 276, 282.)

Code of Civil Procedure section 1286.2 "provide[s] limited grounds for judicial review of an arbitration award." (*Richey v. AutoNation, Inc.*, *supra*, 60 Cal.4th at p. 916.)[6]  Among these grounds is that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).)  This "excess-of-authority exception applies, and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state.' " (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 73.)

---

[6] Praetorian contends that the judgment must be affirmed because under the contract ERO waived its right to seek *any* judicial review.  Since we reject ERO's appeal on the merits, we need not address this argument.

4

Where, as here, a party claims that an award exceeded an arbitrator's powers because "the entire [underlying] contract or transaction was illegal," the issue of illegality is for the trial court to decide, and it owes no deference to the arbitrator's resolution of that issue. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 31–32; *Lindenstadt v. Staff Builders, Inc.* (1997) 55 Cal.App.4th 882, 892.) In turn, " ' " 'we review the trial court's order (not the arbitration award) under a de novo standard.' " ' " (*Roussos v. Roussos* (2021) 60 Cal.App.5th 962, 973; see *Kahn v. Chetcuti* (2002) 101 Cal.App.4th 61, 65 [whether arbitrator exceeded authority is legal issue independently reviewed on appeal].)

B.     *The Contract Was Enforceable Even Assuming It Violated the Law As a Result of Praetorian's Unlicensed Status.*

ERO claims that "the arbitrator exceeded her powers by enforcing an illegal contract," and the trial court incorrectly concluded otherwise. We hold that the court did not err by confirming the arbitration award even if the contract violated former section 5032.

"MAUCRSA creates a state licensing process for cannabis businesses (. . . § 26010 et seq.), including penalties for licensing violations (§§ 26030–26037)," and is administered by the Department of Cannabis Control (DCC). (*Wheeler v. Appellate Division of Superior Court* (2021) 72 Cal.App.5th 824, 832, review granted Mar. 16, 2022, S272850; see § 26010.) Under section 26011.5, "[t]he protection of the public shall be the highest priority for the [DCC] in exercising licensing, regulatory, and disciplinary functions under [the Act]. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."

Section 26053, subdivision (a), provides that "[a]ll commercial cannabis activity shall be conducted between licensees, except as otherwise provided in

5

this division." During the relevant time period, the Act defined "commercial cannabis activity" as "includ[ing] the cultivation, possession, manufacture, distribution, processing, storing, laboratory testing, packaging, labeling, transportation, delivery, or sale of cannabis and cannabis products as provided for in this division." (Former § 26001, subd. (k).)[7]

On January 16, 2019, shortly before ERO and Praetorian entered the contract, regulations were adopted under the Act.[8] They included former section 5032, titled "Commercial Cannabis Activity." That regulation provided, "Licensees shall not conduct commercial cannabis activities on behalf of, at the request of, or pursuant to a contract with any person who is not licensed under the Act." (Former § 5032, subd. (b).)

Under Civil Code section 1667, a contract is illegal if it is "[c]ontrary to an express provision of law" or "[c]ontrary to the policy of express law, though not expressly prohibited." Although " 'questions of public policy are primarily for the legislative department to determine,' . . . a contract or transaction may be found contrary to public policy even if the Legislature has not yet spoken to the issue." (*Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.*, *supra*, 6 Cal.5th at p. 73.) An administrative regulation may establish a public policy with which a contract must comply

---

[7] This definition now also includes "acting as a cannabis event organizer for temporary cannabis events" and appears in section 26001, subdivision (j). (Stats. 2021, ch. 70, § 4.)

[8] We grant ERO's request for judicial notice of these regulations. Former section 5032 was later renumbered as California Code of Regulations, title 4, section 15032, and was ultimately repealed as of September 27, 2021. (Cal. Reg. Notice Register 2021, Nos. 30-Z, p. 954, 41-Z, pp. 1398–1399.) We deny as unnecessary to our decision the balance of ERO's request for judicial notice and Praetorian's request for judicial notice, which pertain to other regulatory documents.

to be lawful. (*Ibid.*; *Kashani v. Tsann Kuen China Enterprise Co.* (2004) 118 Cal.App.4th 531, 542.)

ERO's briefing focuses almost exclusively on its claim that the contract violated former section 5032 because Praetorian is unlicensed. But even assuming there was such a violation, we conclude that the contract was nonetheless enforceable in light of the regulatory scheme and applicable equitable considerations.

"Generally a contract made in violation of a regulatory statute is void. Under this general rule, where a law requires, for regulatory rather than revenue purposes, that one procure a license before offering or performing certain services and provides a penalty for violation, the contract of an unlicensed person to perform such services will not be upheld. [Citations.] 'This rule is based on the rationale that "the public importance of discouraging such prohibited transactions outweighs equitable considerations of possible injustice between the parties." ' " (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 435–436 (*MW Erectors*).)

The general rule "is not absolute," however, "and many exceptions have arisen." (*MW Erectors*, *supra*, 36 Cal.4th at p. 436.) One exception exists when the law " 'making the conduct illegal, in providing for a fine or administrative discipline[,] excludes by implication the additional penalty involved in holding the illegal contract unenforceable.' " (*Ibid.*, italics omitted; *Vitek, Inc. v. Alvarado Ice Palace, Inc.* (1973) 34 Cal.App.3d 586, 591–592.)

*MW Erectors* addressed whether a construction contract was enforceable where the contractor was unlicensed when it executed the contract but licensed by the time it performed the work. (*MW Erectors*,

*supra*, 36 Cal.4th at p. 435.) The statutory scheme at issue, the Contractors' State License Law (CSLL), "prohibits a contractor from suing 'for the collection of compensation for the performance of any act or contract where a license is required . . . without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract,' " and it also "makes it a misdemeanor 'for any person to engage in the business or act in the capacity of a contractor within this state without having a license therefore.' " (*MW Erectors*, at p. 435, quoting §§ 7028, subd. (a), 7031, subd. (a), italics omitted.) *MW Erectors* held that "the CSLL does not automatically void all contracts entered by unlicensed contractors," explaining,

> "[T]he statute expresses no such legislative intent. The CSLL imposes misdemeanor punishment [citations] and authorizes both injunctive relief [citations] and civil citations and penalties [citations] against persons who act as unlicensed contractors. It also expressly bars suits to collect compensation for *unlicensed work* [citation], but does not extend the bar to persons who, though they performed *while licensed*, were unlicensed when they *agreed* to perform the work. This detailed and comprehensive enforcement scheme thus excludes by implication such an additional penalty."

(*MW Erectors*, *supra*, 36 Cal.4th at p. 440.)

MAUCRSA likewise establishes a detailed and comprehensive enforcement scheme for violations of its provisions. (§§ 26030–26039.6; Cal. Code Regs., tit. 4, §§ 17800–17817.) The DCC may suspend or revoke a license and place on probation or fine a licensee who "is found to have committed any of the acts or omissions constituting grounds for disciplinary action." (§ 26031, subd. (a); Cal. Code Regs., tit. 4, §§ 17802, 17809–17810.) These grounds include "[f]ailure to comply with the provisions of [the Act] or any rule or regulation adopted pursuant to [it]." (§ 26030, subd. (a).) In

8

addition, "[a] person engaging in commercial cannabis activity without a license" or "aiding and abetting unlicensed commercial cannabis activity" is subject to civil penalties. (§ 26038, subd. (a)(1)–(2).) As Praetorian observes, while "conducting business with an unlicensed entity or operating without a license in the California cannabis industry can [thus] result in a myriad of enforcement actions," none of the relevant provisions reveal a legislative intent to invalidate contracts between licensed and unlicensed parties as "an additional penalty." (*MW Erectors*, *supra*, 36 Cal.4th at p. 440.)

ERO does not directly respond to this argument, although it suggests that cases enforcing an illegal contract are distinguishable because they involved " 'technical failures' " to comply with the law. In contrast, ERO claims, the contract here involved the sale of "Binske products under Colorado packaging as a result of . . . a Colorado company['s] . . . influence in ERO's commercial cannabis operations. This was exactly the type of thing [former] section 5032 and . . . [section] 26053 [were] designed to prevent."

It is true that even if nonenforcement of a contract is not contemplated as "an additional penalty" for violations of a regulatory scheme, courts may nevertheless hold that the contract is void upon "a showing that such a result is essential to effectuate the statute's protective purposes." (*MW Erectors*, *supra*, 36 Cal.4th at pp. 440–441.) But ERO's cursory argument fails to convince us that the contract here, which is at base an intellectual property licensing agreement, was fundamentally inconsistent with MAUCRSA's purpose of protecting public safety with regard to cannabis products. Thus, even if the contract was illegal, it was not void, because the statutory scheme does not contemplate unenforceability as a penalty.

Moreover, we agree with Praetorian that equitable considerations also justify enforcing the contract. "In compelling cases, illegal contracts will be

9

enforced in order to 'avoid unjust enrichment to a defendant [i.e., the party seeking to avoid the contract] and a disproportionately harsh penalty upon the plaintiff [i.e., the party seeking to enforce the contract].' [Citations.] ' "In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality[,] and the particular facts." ' " (*Asdourian v. Araj* (1985) 38 Cal.3d 276, 292 (*Asdourian*).)

Factors that courts commonly consider in determining whether to enforce an illegal contract weigh strongly in Praetorian's favor. As a cannabis business, not a consumer or member of the public, ERO is not part of "the group primarily in need of [the Act's] protection." (*Asdourian, supra*, 38 Cal.3d at p. 292; *California Physicians' Service v. Aoki Diabetes Research Institute* (2008) 163 Cal.App.4th 1506, 1516.) In addition, the contract was "not malum in se ('immoral in character, inherently inequitable or designed to further a crime or obstruct justice') but [was] malum prohibitum ('only voidable depending on the factual context and the public policies involved')." (*California Physicians' Service*, at pp. 1516–1517, quoting *Asdourian*, at p. 293.)

Finally, and perhaps most importantly, ERO is the party more at fault and would be unjustly enriched if the contract was not enforced. (*Asdourian, supra*, 38 Cal.3d at p. 293; *Wald v. TruSpeed Motorcars, LLC* (2010) 184 Cal.App.4th 378, 392.) Praetorian provided services for which it was never compensated, played no apparent role in the delay in getting Binske products to market, and did not breach the contract. In contrast, ERO, which as a licensed entity should have been aware of California law on cannabis commercial activity, seeks "to repudiate a debt based on the putatively illegal *business status* of the creditor," not any fundamental violation of public

policy.  (*Wald*, at p. 392.)  In short, even if the contract violated former section 5032, there are compelling reasons to enforce it nonetheless.  ERO therefore fails to show that the arbitrator exceeded her powers by entering an award based upon it.

### III.
#### DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

_____
Humes, P.J.

WE CONCUR:


_____
Banke, J.


_____
Wiss, J. *


\*Judge of the Superior Court of the City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*Praetorian Global v. Eel River Organics*  A164245