Filed 6/27/23  Fidelity National Title Co. v. Mehta CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| FIDELITY NATIONAL TITLE COMPANY, <br><br>     Plaintiff, <br> v. <br><br> KUSUM MEHTA et al., <br><br>     Defendants and Appellants; <br><br> DEVONSHIRE SILVER PLAZA, LLC, <br><br>     Defendant and Appellant. | B309988 <br><br> (Los Angeles County Super. Ct. No. BC711264) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Reversed in part with directions.

Peter D. Gordon and Associates, Peter D. Gordon and Andrew Schoettle for Defendant and Appellant Kusum Mehta.

John Schlanger for Defendant and Appellant John Gupta.

Cozen O'Connor, Frank Gooch III and Matthew E. Lewitz for Defendant and Appellant Devonshire Silver Plaza LLC.

Defendants and appellants Kusum Mehta and John Gupta, and defendant and cross-appellant Devonshire Silver Plaza, LLC (Devonshire) arbitrated a breach of contract dispute regarding the purchase agreement between Devonshire and Mehta (executed by Mehta's agent, Gupta). The arbitrator decided all claims in Devonshire's favor, and awarded Devonshire the $70,000 earnest money deposit Mehta had placed in escrow, consequential damages, and attorney fees. Pursuant to Code of Civil Procedure section 1286.6, subdivision (b),[1] the trial court "corrected" the arbitration award by removing the consequential damages, because the trial court concluded the arbitrator had acted in excess of his powers under the purchase agreement by awarding them. The trial court otherwise confirmed the award, and entered judgment against Mehta and Gupta based thereon.

All three parties appeal from that judgment. Devonshire challenges the judgment to the extent it does not include the consequential damages initially awarded by the arbitrator, arguing the court erred in correcting the award to remove them. Mehta and Gupta challenge the judgment to the extent it awards Devonshire attorney fees, which they argue the arbitrator did not have the power to grant under the purchase agreement. They contend the court erred in declining their request below that the court correct this aspect of the award.

As to Devonshire's cross-appeal, we hold the trial court should have included the arbitrator's grant of consequential damages in the judgment. As to Mehta and Gupta's appeals, we hold the court properly included the arbitrator's grant of attorney

_____

[1] Subsequent unspecified statutory references are to the Code of Civil Procedure.

2

fees in the judgment. Accordingly, the order confirming the arbitration award and the subsequent judgment are vacated, and we instruct the court, upon remand, to enter a new order and a new judgment consistent with this opinion.

## FACTS AND PROCEEDINGS BELOW

### A. The Purchase Agreement Between Mehta and Devonshire

On February 6, 2018, Devonshire and Mehta entered into an agreement (the purchase agreement), pursuant to which Mehta was to buy a shopping center from Devonshire for $2,650,000. Gupta served as Mehta's agent in connection with the purchase agreement and transaction. Gupta signed Mehta's name to many of the necessary documents to the transaction that did not require notarization, including the purchase agreement.

The purchase agreement requires that, within two days of the agreement's effective date, Mehta place into escrow an earnest money deposit of $70,000. The agreement requires the earnest money deposit to "remain in escrow . . . until removal of the inspection contingencies," at which point it should be released to Devonshire and credited towards Mehta's payment of the purchase price. In the event of a "default" by Devonshire, the deposit would be released back to Mehta, but in the event that "[Mehta] defaults on [the] agreement after removal of contingencies, [Mehta's] deposit is non-refundable and is forfeited to [Devonshire,]" and Devonshire "shall be released from its obligations to sell the property." (Capitalization omitted.)

The purchase agreement also addresses the damages Devonshire could seek as the remedy for any "default in [Mehta's] purchase obligations." Specifically, it provides that Devonshire

3

and Mehta "agree that it would be impracticable or extremely difficult to fix actual damages in the event of a default by [Mehta]" and that "under the agreement, not caused by any breach by [Devonshire], [Devonshire] . . . shall retain [Mehta's] deposit . . . as liquidated damages, which shall be [Devonshire's] sole and exclusive remedy in law or at equity for [Mehta's] default." (Capitalization omitted.)

The purchase agreement also contains an agreement that final and binding arbitration be the parties' sole and exclusive means of resolving "[a]ll disputes arising between [them] with respect to the subject matter of [the] purchase agreement or the transaction contemplated herein (including but not limited to the parties' rights to the deposit or the payment of commissions as provided herein)." (Capitalization omitted.) It further provides that "[a]ny party who fails or refuses to submit to arbitration following a demand by the other party shall bear all costs and expenses, including attorneys' fees, incurred by such other party in compelling arbitration." The purchase agreement does not have a separate provision addressing the general availability of attorney fees for a prevailing party in arbitration.[2]

Nor does the arbitration provision further address what the arbitrator may or may not award as relief in such arbitration. It

---

[2] The only two references to attorney fees in the purchase agreement are in the aforementioned portion of the arbitration provision and a provision, not implicated by the instant appeal, governing "release and indemnity" (capitalization omitted), in which Mehta waives her right to recover any kind of relief from Devonshire, including "reasonable attorneys' fees," that "may arise on account of or in any way be connected with . . . ownership . . . of the property." (Capitalization omitted.)

4

does, however, require that the arbitrator conduct the arbitration "in accordance with [ADR Services, Inc.'s (ADR)] arbitration rules," which provide that "[t]he arbitrator may grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties."

As to the scope of the arbitrator's authority, the arbitration provision provides that "[t]he arbitrator shall apply the provisions of this purchase agreement without varying therefrom, and shall not have the power to add to, modify, or change any of the provisions hereof." (Capitalization omitted.)

## B. Failure of Escrow and Mehta's Refusal to Release Deposit

Mehta placed a $70,000 deposit in escrow at Fidelity National Title (Fidelity) as the purchase agreement requires. Mehta did not, however, deposit the remainder of the purchase price by the March 15, 2018 escrow deadline (or at any time thereafter).[3] On March 16, 2018, Devonshire instructed Fidelity to cancel escrow and deliver the $70,000 deposit to Devonshire. Fidelity required written releases from Mehta, Gupta, and Devonshire in order to deliver the deposit to Devonshire. Mehta and Gupta refused to provide Fidelity with the requested releases, and thus Fidelity retained the deposit in escrow.

---

[3] Mehta attributes this to "Mehta [being] in India and there [being] not enough time to have the agreement notarized in the [United States] Embassy there." Mehta attempted three days before escrow was to close "to substitute . . . Gupta or his company as the purchaser of the property" to address her inability to execute the documents, but this "was unacceptable to Devonshire."

5

## C.    Devonshire's Arbitration Demand and Related Court Proceedings

On April 11, 2018, Devonshire filed with ADR a demand for arbitration against Mehta and Gupta, Fidelity, and the law firm and real estate agent Devonshire hired to list the property for sale (Brandon J. Michaels and Marcus & Millichap Real Estate Investment Services, Inc, hereinafter the Marcus & Millichap parties), seeking release of the deposit based on Mehta's "default and failure to perform obligations under the purchase agreement."  (Capitalization omitted.)

On June 22, 2018, Fidelity filed an interpleader action in the superior court against Devonshire, Mehta, Gupta, and the Marcus & Millichap parties regarding the $70,000 deposit.

On September 7, 2018, Mehta and Gupta filed a cross-complaint in the interpleader action, asserting causes of action for breach of contract and fraud against Devonshire and the Marcus & Millichap parties, and seeking specific performance by Devonshire under the purchase agreement.  Due to the filing of the interpleader action and the cross-complaint against Devonshire filed therein, ADR held all proceedings regarding Devonshire's arbitration demand in informal abeyance.

On November 7, 2018, Devonshire filed a motion to compel arbitration, to stay proceedings in the interpleader action pending completion of arbitration, and to recover its attorney fees incurred in bringing the motion to compel.  On February 20, 2019, the court granted Devonshire's motion to compel and awarded Devonshire attorney fees in the amount of $7,010.00.  This grant of attorney fees is not challenged on appeal.

6

## D.    Arbitration Proceedings

The parties resumed proceedings on Devonshire's arbitration demand before a single arbitrator at ADR. Devonshire's amended arbitration demand alleged several claims, including a breach of contract claim against Mehta and fraudulent inducement and conspiracy to defraud claims against Mehta and Gupta.  Devonshire identified as breaches of the purchase agreement Mehta's failure "to timely close the transaction for the purchase of the property" and Mehta's refusal to execute a release authorizing transfer of the $70,000 deposit. As to the fraud-based claims, Devonshire alleged that "Mehta and Gupta fraudulently induced [Devonshire] to enter into the [purchase] agreement with the intent to have . . . Mehta back out of the transaction to buy the property and . . . assign the [purchase] agreement to . . . Gupta."  (Capitalization omitted.) Devonshire alleged that "the purpose of this action was to tie up the property and prevent other purchasers from buying the property" (capitalization omitted) and to facilitate Gupta's stepping into the transaction, "knowing that . . . Gupta, in light of his background and description as being called the 'worst slumlord in Los Angeles,' who has significant multiple six-figure judgments entered against him, would not be creditworthy, and could not qualify for a loan to purchase the property." (Capitalization omitted.)

The relief Devonshire sought in its arbitration demand consisted of (a) the $70,000 deposit in escrow; (b) over $550,000 in consequential damages, primarily loss of income, because Mehta's breach of contract and Mehta and Gupta's fraud rendered Devonshire "unable to lease the stores located at the property" for a period of time (capitalization omitted); (c) punitive

7

damages; and (d) attorney fees resulting from the negotiation and drafting of transaction-related documents and Gupta and Mehta's refusal to release the deposit.

Mehta and Gupta submitted a joint "answer, affirmative defenses and counterclaim" (capitalization omitted), and later Mehta submitted an "amended demand." In neither of these documents did Mehta and Gupta assert any affirmative defenses based on, or otherwise reference, any contractual limitations on Devonshire's ability to recover attorney fees beyond those incurred in connection with compelling arbitration. Gupta and Mehta's counterclaims for breach of contract and fraud-concealment sought return of the $70,000 deposit, consequential damages, and attorney fees incurred during the arbitration. Mehta also alleged a cause of action for specific performance, seeking a forced sale of the property to her and the "costs of suit."

### E.    Arbitration Award

The arbitrator held a three-day hearing. Shortly after commencement of the arbitration hearing, the claims by and against the Marcus & Millichap parties were resolved.

The arbitrator ultimately issued an award in Devonshire's favor and against Mehta and Gupta in all respects.[4] The arbitrator concluded that Mehta and Gupta had failed to meet their burden of proof on their cross-claims, and dismissed the cross-claims without awarding them any relief. The arbitrator concluded Devonshire had met its burden of proof as to both its fraud claim against Mehta and Gupta and its breach of

---

[4] Mehta and Gupta filed a written request that the arbitrator modify the award by removing any grant of attorney fees to Devonshire. The arbitrator denied the request.

contract action against Mehta, and awarded the following relief to Devonshire: (1) $70,000 "based on [the liquidated damages provision] of [the purchase agreement]"; (2) $267,973.31 "for lost rents due to the actions of [Mehta and Gupta] in failing to perform under the terms of the purchase . . . agreement" (capitalization omitted); (3) $107,183.62 for triple net expenses Devonshire "incurred and was not able to pass along to tenants because [Mehta and Gupta's] actions prevented them from entering into new leases" and (4) "$167,315.94 in attorneys fees, together with $16,450.00 in costs."[5]

The arbitrator addressed his grant of lost rents and expenses as consequential damages in some detail in the award. He noted that, although the purchase agreement contains a "liquidated damages clause which purports to limit Devonshire's damages to the $70,000 earnest money deposit . . . it was reasonably foreseeable that there would be consequential damages in the event of [Mehta and Gupta's] breach, certainly beyond the de minimis $70,000 earnest money deposit." In considering the amount of consequential damages to award, the arbitrator noted "Civil Code Section 3300 provides that damages should consist of the amount which will compensate [Devonshire] for all detriment proximately caused by [Mehta and Gupta's] breach" and that "damages should put [Devonshire] in as good a position as it would have occupied but for [Mehta and Gupta's] breach." As to lost rents, the arbitrator explained that Mehta and Gupta's "filing of a lawsuit for specific performance established a cloud over the property, and while not technically

_____

[5] The award also indicates Devonshire had not established that Mehta and Gupta's actions warranted punitive damages.

9

the same as a lis pendens, the disclosure or discovery of the existence of that lawsuit would certainly have a chilling effect on another potential purchaser or lessee of the property," something the evidence presented at arbitration supported had occurred with at least one prospective buyer.

### F.    Confirmation of Arbitration Award

On May 11, 2020, Devonshire filed a petition to confirm the arbitration award in the superior court.  On May 21, 2020, the day of the statutory deadline for filing a response to such a petition, Mehta—but not Gupta—filed an ex parte application seeking an extension of that deadline for Mehta only on the ground that she had retained new counsel.  Transcripts from the hearing on the petition are not in the record on appeal, but according to the notice of ruling that Mehta later served, at that hearing, counsel advised the court that "counsel of record for . . . [Gupta and Mehta] had asked . . . (on May 21, 2020), to join in the ex parte application to extend the time for filing a response to the motion to confirm."  (Capitalization omitted.)  Also according to the notice of ruling, Devonshire withdrew its initial objection to this request, and the court granted both Gupta and Mehta an extension.  At the court's direction, Mehta served a notice of ruling reflecting that the court had extended the deadline for both Gupta and Mehta to file a response.  Devonshire did not object to the notice of ruling.

By the extended deadline, Mehta filed a "response and opposition to [the] petition" and Gupta filed a pleading entitled "response . . . to [the] petition . . . ; request that the arbitration award be corrected."  (Capitalization omitted.)

Devonshire filed a reply, in which Devonshire did not argue Gupta's responsive filing was untimely.

10

The "correct[ion]" Gupta's responsive pleading sought was removal of any attorney fees from the award, limitation of any damages to $70,000, and naming Mehta alone as the party responsible to pay any award. Although Mehta's response was not styled as a request for correction, it argued both that "the arbitration award . . . should be set aside and rendered void and unenforceable" and, in the alternative, that any award confirmed "be limited to the express liquidated damages of $70,000" on the basis that the arbitrator lacked authority to award attorney fees and to award damages in excess of $70,000.

The trial court "corrected" the arbitration award by removing the grant of consequential damages (lost rents and triple net expenses) the arbitrator had included, and otherwise confirmed the award.

### G. Judgment

Mehta filed a motion for reconsideration of the court's order correcting and confirming the award, which Gupta joined. The court denied the motion. The court entered a "judgment confirming arbitration award." (Capitalization omitted.) The judgment held Mehta and Gupta jointly and severally liable to Devonshire "[b]ased upon . . . the arbitration . . . between the parties" for: (1) $70,000.00, to be paid in part out of the deposit interpleaded into court; (2) attorney fees and costs Devonshire incurred in arbitration ($167,315.94 and $16,450.00, respectively); and (3) attorney fees and costs Devonshire incurred in connection with its petition to confirm the award ($14,476.65). Consistent with the court's correction in the order confirming the award, the judgment did not include any consequential damages for lost rents or expenses. The judgment also identified

11

Devonshire as the prevailing party in the arbitration on Mehta and Gupta's cross-complaint and dismissed the cross-complaint.

## DISCUSSION

All parties appeal the judgment resulting from the court's order confirming the arbitration award with corrections. Devonshire's appeal challenges the judgment to the extent it does not include the consequential damages reflected in the arbitration award. Mehta and Gupta's appeals challenge the judgment to the extent it contains an award of attorney fees and costs, which they argued below (as they do on appeal) the court should have removed from the final judgment. Our review for both appeals is de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 (*Advanced Micro*).) "Both our review and the trial court's review of the arbitrator's award, however, are limited, as discussed in more detail below." (*VVA-TWO LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 998 (*VVA-TWO*), citing *Advanced Micro, supra*, at pp. 376, fn. 9 & 381.)

"Under California law, the scope of judicial review of arbitration awards is very narrow. ([Citation]; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 10 . . . (*Moncharsh*) ['arbitrator's decision should be the end, not the beginning, of the dispute'].) Consistent with this limited role, a court may vacate an arbitral award only on certain statutorily enumerated grounds. (*Hightower v. Superior Court* (2001) 86 Cal.App.4th 1415, 1433 . . . .) These are laid out in the Code of Civil Procedure, and reflect not error in the merits of the decision, but ' "circumstances involving serious problems with the award itself, or with the fairness of the arbitration process." ' (*Id.* at pp. 1432–1433.)" (*VVA-TWO, supra*, 48 Cal.App.5th at p. 998.) "A court may

12

vacate only an entire arbitral award, not some portion of it, even if the basis for vacatur affects only one aspect of the award." (*Id.* at p. 998.)

A court may, however, "correct" an arbitral award under certain very limited circumstances. (See § 1286.6.) Like the permissible bases for vacatur, the bases on which a lower court may "correct" an arbitration award are limited and enumerated by statute. Namely, section 1286.6 provides that "the court, unless it vacates the award . . . shall correct the award and confirm it as corrected if the court determines that: [¶] (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy." (§ 1286.6, subds. (a), (b) & (c).)

Devonshire argues in its appeal that the court erred in correcting the consequential damages amount in the award before entering judgment based thereon. According to Devonshire, section 1286.6 did not authorize the court to do so, because the arbitrator did not "exceed[ ] [his] powers" under the arbitration agreement when he awarded these damages. (§ 1286.6, subd. (b).) Mehta and Gupta argue in their appeals that the court erred in *not* correcting the grant of attorney fees in the arbitration award before entering judgment based thereon, because the arbitrator "exceeded [his] powers" under the arbitration agreement by awarding attorney fees. (*Ibid.*)

13

As set forth in more detail below, we conclude the court erred in correcting the amount of damages awarded, but did not err in awarding attorney fees and costs.

## A. Devonshire's Appeal: Consequential Damages

### 1. *Advanced Micro* approach to assessing whether an arbitrator exceeded his or her powers by awarding a remedy

"In *Advance Micro*, the California Supreme Court described the analysis in which a court may engage to ascertain whether or not an arbitrator ' "exceed[s] [his] powers" ' by awarding a particular remedy."[6] (*VVA-TWO, supra*, 48 Cal.App.5th at p. 1003.) "Arbitrators are not obliged to read contracts literally, and an award may not be vacated merely because the court is unable to find the relief granted was authorized by a specific term of the contract." (*Advanced Micro, supra*, 9 Cal.4th at p. 381; *Moncharsh, supra*, 3 Cal.4th at p. 11; *Greenspan v. LADT,*

---

[6] Although *Advanced Micro* addressed the scope of the arbitrator's authority as a basis for vacating an arbitration award, as opposed to correcting it, the concept is the same in both contexts, as reflected by the corollary nature of the statutory provisions regarding vacatur based on the arbitrator exceeding his or her power and correction on this basis. (See § 1286.2, subd. (a) & (a)(4) ["the court shall vacate the award if the court determines . . . [¶] . . . [¶] . . . [t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted"]; § 1286.6, subd. (b) ["the court, unless it vacates the award . . . shall correct the award and confirm it as corrected if the court determines that: [¶] . . . [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted"].)

*LLC* (2010) 185 Cal.App.4th 1413, 1447.)  Rather, "arbitrators, unless expressly restricted by the agreement of the parties, enjoy the authority to fashion relief they consider just and fair under the circumstances existing at the time of arbitration, so long as the remedy may be rationally derived from the contract and the breach."  (*Advanced Micro, supra*, at p. 383.)  "Parties to an arbitration agreement must accept the risk of arbitrator errors because arbitrators are not required to make decisions according to the rule of law" (*State Farm Mutual Automobile Ins. Co. v. Robinson* (2022) 76 Cal.App.5th 276, 282 (*State Farm*)), and the arbitrator's interpretation of the agreement and the law at issue is what the parties bargained for.  (See *Moncharsh, supra*, at p. 28.)  Thus, "[t]he critical question with regard to remedies [in an arbitration award] is not whether the arbitrator has rationally interpreted the parties' agreement, but whether the remedy chosen is rationally drawn from the contract as so interpreted" (*Advanced Micro, supra*, at p. 377), and "in reviewing an arbitration award, a court may review only to assure the arbitrator's interpretation provides the basis for the remedy awarded."  (*VVA-TWO, supra*, at p. 1003.)

## 2. Under *Advanced Micro*, the arbitrator did not exceed his powers under the purchase agreement by awarding consequential damages

Based on the *Advanced Micro* analytical framework set forth in the preceding section, to assess whether the arbitrator acted within the scope of his power under the purchase agreement by awarding consequential damages for breach of the purchase agreement:  (1) We first look to whether the agreement expressly prohibited this remedy; (2) If not, we

15

discern the arbitrator's interpretation of the agreement; and (3) We then assess whether the award is rationally related to a breach of the agreement as interpreted by the arbitrator. (See *Advanced Micro, supra*, 9 Cal.4th at p. 381.)

### a. Prohibition on remedy

No provision in the purchase agreement expressly prohibits granting consequential damages for any breach of the agreement by any party. Mehta and Gupta argue, however, that the language in the liquidated damages clause requiring that $70,000 be the "sole and exclusive remedy . . . for [Mehta's] default" in her "purchase obligations" is tantamount to a prohibition on any damages other than the $70,000 for any breach of the contract by Mehta. We disagree. Under certain circumstances, a provision in an agreement describing a particular remedy as the sole and exclusive remedy available may be tantamount to a prohibition on other remedies. (See *O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1057–1058 (*O'Flaherty*) [partnership agreement provision that " '[u]pon an event of termination of a partner, such partner . . . shall *only* be entitled to [certain] rights and preferences . . . *in lieu of all other rights hereunder*, and shall not be entitled to receive any other property payments or benefits whatsoever against the partnership or the remaining partners' " constituted a prohibition on arbitrator returning partner's capital to him as a result of his termination (capitalization omitted & italics added)].) But the liquidated damages provision Mehta and Gupta cite does not provide that $70,000 shall be the sole and exclusive remedy for *any* breach of *any* obligation under the purchase agreement. Rather, it much more specifically addresses the remedy available "upon [Mehta']s default"—specifically, a "default in [Mehta's]

16

purchase obligations" not caused by Devonshire. The liquidated damages provision thus prohibits the arbitrator from awarding any damages in excess of $70,000 *as compensation for a default by Mehta in her purchase obligations under the agreement.* But the purchase agreement contains no limitation on the damages the arbitrator may award as a result of breaches based on something other than Mehta's default in her purchase obligations.

Therefore, in order for us to determine whether the purchase agreement prohibits the consequential damages awarded, we must determine whether the breach for which the arbitrator awarded the consequential damages constitutes a "default in [Mehta's] purchase obligations" to which the liquidated damages provision applies. But we may only make that determination based on *the arbitrator's* understanding of the breaches he identified—not our own understanding of the agreement and breach. Therefore, we must proceed to the next step in the *Advanced Micro* analysis—identifying the arbitrator's interpretation of the agreement and the breach—before we can determine the applicability of the agreement's limited prohibition on consequential damages.

> b. Arbitrator's interpretation of the agreement and breach

The arbitration award does not include an explicit interpretation of the purchase agreement. Nevertheless, an arbitrator's interpretation of a contract may be "implied in the [arbitration] award itself." (*Advanced Micro, supra*, 9 Cal.4th at p. 381.) Here, the award's discussion of Mehta's breach as a basis for awarding consequential damages focuses not only on her failure to pay the purchase price by the close of escrow,

17

but on her filing a specific performance counterclaim in the interpleader action, which the award characterizes as tantamount to filing a lis pendens on the property. From this, we imply that the court interpreted the agreement as imposing at least three distinct obligations on Mehta: an obligation to make the payments as set forth in the agreement (Mehta's "purchase obligations"), an obligation to relinquish any entitlement to purchase the property after she defaults, and an obligation to submit any disputes "arising from" the agreement or transaction contemplated therein to an arbitrator. Our conclusion that the arbitrator so interpreted the obligations in the purchase agreement is further bolstered by the fact that the agreement contains language expressly imposing such obligations. In any event, ours is not to review the correctness of the arbitrator's interpretation, but merely to identify it.

We may further imply from this same language in the award that the breaches the arbitrator identified included breaches of all three of these obligations.

Having discerned the arbitrator's understanding of the breaches at issue, we may complete our analysis from step one and determine whether the arbitrator viewed the breach for which he was awarding consequential damages as a "default in [Mehta's] purchase obligations" to which the liquidated damages provision's prohibition on consequential damages applies. We conclude he did not. In the award, the arbitrator acknowledged as valid the limitation on damages reflected in the liquidated damages provision, yet determined that damages beyond $70,000 were warranted nevertheless. The only way to reconcile these two aspects of the award is to imply that the arbitrator did not view Mehta's obligations to resolve disputes

18

solely in arbitration and relinquish the rights to purchase the property as "purchase obligations" to which the liquidated damages provision applies. Because they are not purchase obligations, the liquidated damages provision does not "explicitly and unambiguously" prohibit awarding consequential damages for breach thereof. (*Advanced Micro, supra*, 9 Cal.4th at p. 383.)

We may therefore proceed to the third and final step in the *Advanced Micro* analysis.

### c. Rational relationship

Finally, we consider whether the award of consequential damages was rationally related to a breach of the agreement under the arbitrator's interpretation thereof. A remedy "is rationally related to the breach if it is aimed at compensating for, or alleviating the effects of, the breach." (*Advanced Micro, supra*, 9 Cal.4th at p. 381, fn. 12.) In awarding consequential damages, the arbitration award explains that, as a result of Mehta filing a specific performance counterclaim in the interpleader action, Devonshire was restricted in its ability to rent out the property, resulting in lost rents and other expenses.[7] The arbitrator's consequential damages in the amount of such lost rents and expenses are thus "aimed at . . . alleviating the effects of" these Mehta's breach of her obligations under the purchase agreement to resolve disputes in arbitration and relinquish any right to purchase the property following her default (*Advanced Micro*,

---

[7] Whether awarding both lost rents and expenses reflects double recovery is not an issue Mehta and Gupta raise on appeal. In any event, it is highly unlikely a trial court could correct the award on this basis, given the limited scope of a trial court's powers under section 1286.6.

19

*supra*, 9 Cal.4th at p. 381, fn. 12), and these damages are rationally related to a breach of obligations the arbitrator interpreted the purchase agreement to include.

Based on the foregoing, we conclude the arbitrator's award of consequential damages did not exceed his power under the agreement. Accordingly, the court lacked authority under section 1286.6, subdivision (b) to correct this aspect of the award. As previously discussed, there are only two other bases on which section 1286.6 permits a court to "correct" an arbitration award. Mehta and Gupta do not argue that either of these authorized the trial court to correct the consequential damages award in the manner it did. Nor do we see any basis in the record for such an argument. Thus, the trial court erred in correcting the arbitration award by removing the consequential damages amount from the award.

### 3. Mehta's and Gupta's arguments to the contrary are unpersuasive

In defending the court's correction of the consequential damages amount, Mehta and Gupta argue that the only plausible interpretation of the liquidated damages clause is that it sets forth the sole remedy for *any* breach by Mehta, and that this interpretation is also supported by California law. But what is a plausible or correct interpretation of the purchase agreement and its liquidated damages provision is of no consequence to our analysis under *Advanced Micro*. Courts must defer to an arbitrator's assessment of the merits—here, his interpretation of the purchase agreement and any breaches thereof. (See *Advanced Micro, supra*, 9 Cal.4th at p. 372.) The parties " 'empowered [the arbitrator] to interpret and apply the parties' agreement to the facts he found to exist' " (*Gueyffier v. Ann*

20

*Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185 . . . (*Gueyffier*); see *Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1360 . . . ), and California law does not permit a court to correct even what may appear to be obvious errors in such interpretation. (*Moncharsh, supra*, 3 Cal.4th at pp. 6, 28 & 33.)" (*VVA-TWO, supra*, 48 Cal.App.5th at p. 1005.)

Mehta and Gupta raise a related argument that the arbitrator's award effectively "modified" the liquidated damages clause, in violation of the purchase agreement's requirement that an arbitrator "shall not have the power to add to, modify, or change any of the provisions [of the agreement]." We disagree, as have several courts before us in considering similar arguments. As a preliminary matter, this argument necessarily assumes that the arbitrator must apply "the provisions [of the agreement]" as Mehta and Gupta interpret them, rather than as the arbitrator interprets them. This is inconsistent with California Supreme Court authority and the general principles discussed above. Second, "[t]he mere existence of a 'no modification' provision . . . d[oes] not prevent the arbitrator from fashioning a remedy that was neither expressly contemplated nor directly contrary to the agreement." (*San Francisco Housing Authority v. Service Employees Internat. Union, Local 790* (2010) 182 Cal.App.4th 933, 948; *VVA-TWO, supra*, 48 Cal.App.5th at p. 1006 ["[t]hat the arbitrator's authority and remedial power are defined (in part) through a cross-reference to the [broader purchase agreement] generally does not transform interpretation of the [purchase agreement] into a proper basis for vacating [or correcting] an arbitration award"]; *Harris v. Sandro* (2002) 96 Cal.App.4th 1310, 1314 [argument that arbitrator "exceeded his powers by issuing . . . 'inconsistent' rulings" was "nothing more

21

than a claim that the arbitrator erred in a legal ruling," which cannot provide a basis for vacatur]; *Advanced Micro, supra*, 9 Cal.4th at p. 373.)

The Supreme Court rejected a similar argument in *Gueyffier, supra*, 43 Cal.4th 1179, and that case is instructive. The arbitrator in *Gueyffier* "excus[ed] as futile [one party's] failure to give [another party] prompt notice of, and an opportunity to cure, its breaches." (*Id.* at p. 1185.) The court concluded that the parties' arbitration agreement, which provided that the "arbitrator would have no power to 'modif[y] or change[ ]' any material term of the contract, *including the notice-and-cure provision*," "did not unambiguously prohibit the arbitrator from excusing performance of a contractual condition where the arbitrator concluded performance would have been an idle act." (*Ibid.*, italics added.) The high court explained that "[t]he contract's no-modification provision would have been effective to bar an actual change or modification[,] . . . [b]ut to excuse performance of a contract term in a specific factual setting is not, in ordinary usage at least, to 'modif[y] or change[ ]' the term. The no-modification clause [thus] did not 'explicitly and unambiguously' (*Advanced Micro . . . , supra*, 9 Cal.4th at p. 383) bar the arbitrator from deciding that . . . [the] notice-and-cure provision was inapplicable on the facts of the case as he found them." (*Gueyffier, supra*, at p. 1185, italics omitted.) The arbitrator here similarly found the liquidated damages limitation, as he interpreted it, was inapplicable to a claim for breach of a non-purchase obligation, and awarded additional damages accordingly. In short, "regardless of the merits of [Mehta and Gupta's] proposed alternative interpretation of [the purchase agreement or no-modification provision], as long

22

as the arbitrator's interpretation is rationally related to the remedy," as we conclude above it was, "the arbitrator did not exceed his authority in awarding [that remedy]." (*VVA-TWO, supra*, 48 Cal.App.5th at p. 1006.)

Finally, Mehta argues that Devonshire stated in its interrogatory response and arbitration brief that it was seeking $70,000 as damages for breach of the purchase agreement. But Devonshire's operative arbitration demand clearly submitted to the arbitrator a request for consequential damages in addition to the $70,000 as compensation for the breaches alleged. To the extent Mehta is arguing that Devonshire was offering an interpretation of the purchase agreement via the submissions she identifies, Mehta's interpretation of the purchase agreement is of no moment in our analysis. Under the same principles discussed above, the arbitrator's interpretation of the agreement—whether right or wrong in the eyes of the parties or the eyes of the law—is what the parties agreed to in signing the arbitration agreement. (See *Moncharsh, supra*, 3 Cal.4th at p. 28; *State Farm, supra,* 76 Cal.App.5th at p. 282.)

### C.    Mehta's and Gupta's Appeals:  Attorney Fees

#### 1.    Timeliness of Gupta's challenge to the arbitration award below

As a threshold matter, Devonshire argues that we may "dismiss Gupta's appeal based on his failure to seek timely review of the arbitration award in the trial court." (Capitalization omitted.)  Specifically, Devonshire argues that Gupta failed to file an opposition or response to Devonshire's petition to confirm the arbitration award by May 21, 2020—the statutory deadline for such a responsive pleading—and that only

23

Mehta, not Gupta, applied for and received an extension of this deadline. Devonshire argues that "Gupta [thus] essentially failed to challenge the arbitration award in the trial court" and "because a party's challenge to an arbitration award is a jurisdictional prerequisite to appellate review, this court should not entertain Gupta's untimely challenge to the arbitration award for the first time on appeal." (Capitalization omitted.)

Although only Mehta requested an extension of the deadline to respond to Devonshire's petition below, the notice of ruling served on Devonshire clearly reflects that an extension was granted to both Mehta and Gupta.[8] The record thus

---

[8] Devonshire argues in a footnote that the record does not contain any suggestion that Gupta timely joined Mehta's request for an extension. But the notice of ruling served on Devonshire also reflects that, at the hearing on the request, the court permitted Gupta to so join, and that Devonshire did not object. Specifically, it provides: "At the outset [of the hearing], attorney Gordon advised the court that attorney Schlanger, counsel of record for defendant/respondent John Gupta and Kusum Mehta, had asked [the day before the hearing] (on May 21, 2020), to join in the ex parte application to extend the time for filing a response to the motion to confirm. In reply, attorney Gooch objected to attorney Gordon's status as counsel for defendants/respondents Gupta and Mehta, until the court clerk confirmed that a substitution from John Schlanger to Peter Gordon had been electronically filed on the afternoon of May 21, 2020. At that point, the objection was withdrawn. Based on the foregoing confirmation of the status of attorney Gordon as counsel for defendants/respondents, the court granted defendants/respondents' ex parte application for an extension of time to file a response, as follows: [¶] 1. The deadline for filing responses on behalf of defendants/respondents Kusum Mehta

24

supports that the court granted an extension to both parties. Devonshire cites a recent decision of this district concluding that the deadlines for seeking to vacate or correct an award are " 'jurisdictional,' " and thus that an untimely filed pleading to this effect—even if accepted by the trial court—prevents a litigant from seeking to vacate or correct the award on appeal. (*Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, 1111 & 1114–1115.)  But that same authority recognizes that the statutory deadline at issue here—namely, the 10-day deadline for opposing a petition to confirm an arbitration award—may be extended by the trial court.  (*Id.* at p. 1111 ["[t]he 10-day deadline, however, is a little more flexible, as the [a]ct itself authorizes an extension of the 10-day deadline . . . when the court, either explicitly or implicitly, finds 'good cause' to extend the deadline and where such an extension would not unduly prejudice the other party," italics omitted]; see § 1290.6.)  The record contains substantial evidence that the court granted Gupta an extension:  namely, the notice of ruling served on Devonshire that so indicates, and a lack of any objection thereto by Devonshire in the proceedings below.  To the extent Devonshire is arguing this notice was incorrect and that, as a factual matter, the court did not actually grant the extension, the record does not support this argument.  To the extent Devonshire's argument can be understood as an argument that the court should not have granted such an extension to Gupta,

---

and John Gupta to the petition to confirm the arbitration award is extended to June 25, 2020."  (Capitalization omitted.)  The reporter's transcripts provided on appeal do not include a transcript of the ex parte hearing described in this notice of ruling.

Devonshire has offered no arguments establishing prejudice or lack of good cause, the two statutory requirements for such an extension. (See § 1290.6.) Accordingly, we consider the merits of both Gupta's and Mehta's appeals challenging the grant of attorney fees.

### 2. The arbitrator had authority to award attorney fees

Both Gupta and Mehta challenge the judgment to the extent it includes attorney fees, arguing the arbitrator exceeded his power in granting such relief, and that the court should therefore have corrected the award under section 1286.6, subdivision (b) by removing the award of attorney fees before confirming it.

Parties to an arbitration may empower the arbitrator to decide issues not necessarily included within the arbitration agreement's description of the arbitrator's powers when both parties ask the arbitrator to decide the issue. (See, e.g., *Moore v. First Bank of San Luis Obispo* (2000) 22 Cal.4th 782, 787 (*Moore*) [parties "submitted the question of fees to the arbitrator[ ] . . . by actually requesting an award of fees from the arbitrator[ ] [himself]"]; *J.C. Gury Co. v. Nippon Carbide Industries (USA) Inc.* (2007) 152 Cal.App.4th 1300, 1306 (*J.C. Gury*) [when during arbitration both parties briefed whether a particular contract term was unconscionable and unenforceable, seller requested relief on this basis, and buyer never challenged the arbitrator's authority to decide the issue, "both parties unequivocally submitted the issue of unconscionability to arbitration"].) Thus, regardless of whether the purchase agreement contemplated empowering the arbitrator to award attorney fees, the parties so empowered him by all requesting such fees in the arbitration.

"Having submitted the fees issue to arbitration, [Mehta and Gupta] cannot maintain the arbitrator[ ] exceeded [his] powers, within the meaning of section 1286.6, subdivision (b), by deciding it, even if [the arbitrator] decided it incorrectly." (*Moore, supra*, 22 Cal.4th at p. 787; *J.C. Gury, supra*, at p. 1306 [having submitted an issue to the arbitrator for decision, parties may not on appeal "complain that the arbitrator exceeded his authority" by deciding it]; *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 876 [same].) The recovery or nonrecovery of attorney fees was one of the "contested issues of law and fact submitted to the arbitrator for decision[,]" so "[t]he arbitrator's resolution of these issues is what the parties bargained for" (*Moncharsh, supra,* 3 Cal.4th at p. 28), if not in the arbitration agreement itself, then through their submissions in arbitration.

Mehta and Gupta argue that, because the purchase agreement expressly authorizes recovery of attorney fees for compelling a dispute to arbitration, but does not expressly authorize attorney fees for anything else, the agreement contains an implied prohibition on awarding attorney fees for anything but a motion to compel arbitration. This argument fails in two ways. First, the provision allowing for attorney fees incurred in compelling arbitration does not indicate that such fees are the sole and exclusive type of fees that the arbitrator may award in a dispute regarding the agreement. Thus, the provision does not even implicitly limit the arbitrator's ability to award other types of attorney fees. (Cf. *California Union Square, L.P. v. Saks & Co. LLC* (2020) 50 Cal.App.5th 340, 349–350, 352; *O'Flaherty, supra,* 115 Cal.App.4th at pp. 1057–1058; see *Greenspan, supra*, 185 Cal.App.4th at p. 1447 ["an award may not be vacated merely

27

because the court is unable to find the relief granted was authorized by a specific term of the contract"].) Second and more importantly, even if the purchase agreement contained an express prohibition on the arbitrator awarding attorney fees, this would not affect the arbitrator's power to do so when—as occurred here—all parties asked the arbitrator to issue such an award and no one challenged the arbitrator's authority to do so during the arbitration. (See *J.C. Gury, supra,* 152 Cal.App.4th at pp. 1302, 1305–1306; *id.* at p. 1305 ["the parties may submit for decision issues they were not contractually compelled to submit to arbitration" even if doing so is inconsistent with the provisions of the arbitration agreement].) *J.C. Gury Co.* is instructive here. In that case, the arbitration agreement included an express prohibition on the arbitrator amending the agreement. (*J.C. Gury*, *supra*, at p. 1305.) The buyer argued during the arbitration that a particular provision was unconscionable and thus unenforceable. (*Ibid.*) In responding to this argument before the arbitrator, the seller did not contend that the arbitrator lacked authority to consider this issue. (*Id.* at pp. 1305–1306.) The arbitrator ultimately agreed that the provision at issue was unconscionable and unenforceable, and awarded damages to the buyer on this basis. (*Id.* at pp. 1303–1304.) The Court of Appeal concluded that, although the arbitration award clearly did modify—indeed nullify—a portion of the agreement, and thus exceeded the scope of the arbitrator's power as set forth in the agreement, the award was not in excess of the arbitrator's power as augmented by the parties' act of submitting the issue to the arbitrator during the arbitration. (*Id.* at pp. 1302, 1305.) Specifically, the court noted that the seller had "expressly responded to the buyer's claim

28

of unconscionability and failed to assert, at any time before or during the arbitration proceeding, that the arbitrator's power to find the clause unconscionable or unenforceable was limited by the arbitration clause. A party cannot wait until after an award is made to claim that an issue expressly presented to the arbitrator for decision is beyond his authority." (*Id.* at p. 1302.)

Similarly, during the arbitration in this case, Mehta and Gupta requested attorney fees from the arbitrator and never questioned his authority to award the attorney fees and costs Devonshire likewise requested from the arbitrator. The parties thus submitted the issue of attorney fees to the arbitrator and Mehta and Gupta's argument that he acted outside the scope of his power in deciding the issue fails.[9]

---

[9] We find inapposite the parties' arguments about whether the arbitrator's attorney fees award is authorized by or consistent with California law. The arbitrator was not bound to follow California law, and even if he was, we would be obligated to defer to his interpretation of that law, whether or not it is a correct interpretation. (See *Moore, supra*, 22 Cal.4th at p. 788 [arbitrator's failure to correctly apply California law regarding which party was the "prevailing party" was an error of law and not a basis to conclude the arbitrator exceeded the scope of his authority].)

## DISPOSITION

The order confirming the arbitration award and the subsequent judgment are vacated.  Upon remand, the court is instructed to enter a new order and a new judgment consistent with this opinion.  For the sake of clarity, the new order shall reflect that the arbitration award is confirmed in all respects, and the judgment shall award all relief the arbitrator included in the arbitration award.  Devonshire shall recover its costs on appeal.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


CHANEY, J.


WEINGART, J.

30